The clause in the written application made by the respondents that "there will, however, be a stone chimney built, and the pipe will pass into it at the side," contains either a simple representation, or a promise. A representation applies to the present, a promise to the future. There is not, in my opinion, any such thing as a promissory representation. The *Page 221 
terms involve a contradiction. If there was any representation in the sentence which I have extracted from the application, it was simply of a present intent to make the specified change. If the applicants actually intended at the time to do so, there was no fraud in making the assertion, and although they may have subsequently changed their minds, and therefore abstained from performing the proposed work, the policy of insurance would not have been vitiated on the ground of misrepresentation. But if the respondents had not at the time when they applied for the policy any intent to effect the indicated change, it was fraudulent in them to make the representation, and that like any other fraud would vitiate the contract to which it had led. There may be difficulties in the way of proving the non-existence of an alleged intent, but I think that a jury would be authorized to infer it where no attempt has been made to carry it into effect, and no reason for an actual change of mind had been proved. Had the decision of this cause depended at all upon that question, it should have been submitted to the jury.
But I think that the clause in question went further than a mere representation. It says in express terms that the change will be made, not simply that the respondents intended to make it. This, taken in connection with the attending circumstances, constituted it a positive engagement, and by the express terms of the policy it formed a part of and qualified the contract of insurance. In the last particular it differs from the case ofAlston v. The Mechanics' Mutual Insurance Company of Troy, (4Hill, 329,) where the promise was verbal, and not at all referred to in the policy. There it was properly held that evidence could not be received of a parol promise to qualify a written contract, but Senator Bokee said that if the stipulation in that case (providing for the substitution of a stove for a fire place) had been contained in the policy, the case would present such a violation of contract on the part of the assured as would probably bar him from a recovery. The promise in the case under consideration had direct reference to the extent of the risk; it would be less if the change was made than it was at the time of the application. Taking the two papers together the insurers assumed the existing risk until a reasonable time *Page 222 
should have elapsed to make proposed changes, and after that the proposed diminished risk only, and charged a premium accordingly. The promised change was therefore vital to the continuance of the responsibility. What was a reasonable time for making the alteration was scarcely a question in this cause, as it was never attempted.
It was supposed by the counsel for the respondents that the performance of the promise was waived, or rather that the company accepted of a change of location of the stove as a substitute. It is true that the secretary of the appellants, within three months after the insurance was effected, signed a consent that the policy should remain good, notwithstanding the stove had been removed. Nothing was said about dispensing with the stipulation to construct a stove chimney and carry the pipe into it, nor could the secretary have designed to refer to that, as he added to the consent the remark that it was considered more safe than before — evidently referring to the change of location. That the secretary did not actually intend to waive the performance of the promise made by the assured is evident from the fact, to which he testifies, that when Murdock informed him of the fire, he asked if the chimney had been built.
I think that the policy became inoperative by reason of the non-performance of the promise made by the assured after a reasonable time to make the proposed change had elapsed. There can be no question but that the respondents had abundant time to perform the work long before the fire, which occurred nearly three years after the date of the policy.
The objection that this action cannot be maintained in the names of both the assured when one of them had previously to the loss conveyed all his interest in the property covered by the policy, is, I think, well taken. The plaintiffs aver in their declaration that they had sustained a loss by fire, but the assertion was untrue as to the party who had previously parted with his interest. The averment was material, and the failure to prove it, or rather the proof to the contrary, was therefore fatal to a recovery. (Howard Ryckman v. The Albany InsuranceCompany, 3 Denio, 301.) In the case cited Chief Justice Bronson says, "I agree that in fire policies the assured must have *Page 223 
an interest at the time of the loss as well as when the contract is made. (The Saddlers' Company v. Badcock, 2 Atk. 554,Lynch v. Dalzel, 3 Bro. P.C. 497; 3 Kent, 370.) And so if he has parted with all his interest before the loss happens he cannot recover. But he does not fail on account of any vice in the contract, but for the reason that he has sustained no loss or damage." It is said, however, that in this case there was no positive evidence that the title of one of the plaintiffs had passed to the other previous to the fire, as the deed from Garratt to Murdock was not recorded until some time afterwards. But the deed was dated long before that accident, and as between the parties must be presumed, in the absence of any evidence to the contrary, to have been executed and become effective at the time when it bears date. Besides, the plaintiff Murdock procured from the secretary of the insurers a certificate dated Dec. 20, 1840, nearly two years before the fire, stating that he, Murdock, was then the sole owner of the mill insured, and gave that in evidence on the trial. It is true that the assignees of a chose in action had ordinarily, before the existing statute, a right to maintain a suit upon it in the name of the assignor who was originally a party. But that was to prevent a failure of justice, and was applicable only to cases where the assignee could not proceed in his own name. In this case, however, the grantee of the insured property, by the express provisions of the statute, succeeded to all the rights of the grantor, and one of them was to maintain a suit in his own name. The necessity of using the name of another than the plaintiff in interest failing, the rule is inapplicable. (3 Denio, 301.)
I am also clear that the learned judge who tried this cause erred in deciding, that if by the erection of the barn near the mill the risk was increased, that was no defence to this suit, notwithstanding the condition to the contrary on the back of the policy, and which I concur with my brethren in thinking, was under the circumstances binding upon the parties; and more especially in assigning as a reason for such decision that the plaintiffs had a right to build on their own premises. Undoubtedly the proprietor of an insured building on his own premises has, so long as he is free from any actual intent to destroy it, a *Page 224 
right to surround it with what danger he pleases; he may if he chooses construct a powder magazine within a rod of an ordinary dwelling house which he has insured at the usual moderate rate, but can it be gravely contended that by reason of this ordinary right of property, the policy would still be valid? Whether in this case the erection of the barn so near to the mill increased the risk was a question of fact proper for the consideration of the jury, and the judge was right in refusing to grant a nonsuit on that ground. But he was wrong in so deciding the point and subsequently charging the jury, as to withdraw the question altogether from their consideration. For these reasons I think that a new trial should be ordered.
JEWETT, C.J. also delivered an opinion in favor of a new trial, on the ground that the joinder of Garratt as plaintiff was fatal to the action. He also concurred in opinion that the clause in the application relating to the stove pipe amounted to a warranty; but whether the warranty was broken or not depended on the question whether a reasonable time had elapsed to perform the undertaking. That he thought was a question for the jury, and therefore a nonsuit on that ground was properly refused. He also concurred in opinion that the circuit judge was wrong in holding that the erection of another building on the premises of the insured would not avoid the policy, if the hazard was thereby increased; but whether the hazard was increased, was also a question for the jury, and inasmuch as no request was made to submit that question to them he saw no reason for granting a new trial on that ground.
New trial granted.¹ *Page 225